**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| Joseph Aldag,<br><br>                              Plaintiff,<br><br>v.<br><br>BNSF Railway Co.,<br><br>                              Defendant. | No. 8:26-cv-321<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## <u>INTRODUCTION</u>

1.      BNSF Railway Co. discriminated against Joseph Aldag because of his disability, in violation of the Americans with Disabilities Act (ADA).

2.      Aldag suffers from urinary-voiding dysfunction, including urinary hesitancy/BPH, as well as reduced kidney function associated with treatment for gout.

3.      Because of those conditions, Aldag was physically unable to produce 45 mL of urine on demand during a DOT/FRA follow-up drug test.

4.      DOT drug-testing regulations recognize that some employees cannot produce sufficient urine for physiological reasons. They therefore require a medical evaluation and provide a medical-cancellation pathway when an ascertainable physiological condition could have prevented the employee from providing a sufficient urine specimen.

5.      Aldag obtained and provided medical documentation showing that he suffered from conditions that could have prevented him from producing the required urine specimen.

6.      Nevertheless, BNSF treated Aldag's medically documented inability to urinate on demand as a refusal to test

7. BNSF then removed Aldag from service and dismissed him for refusing to participate in required FRA follow-up drug and alcohol testing.

8. BNSF's conduct was disability discrimination. Aldag brings this action to remedy that discrimination and to recover the damages BNSF caused.

## PARTIES

9. Aldag resides in Omaha, Nebraska.

10. BNSF Railway Co. is a railroad that transports freight across the country.

11. BNSF employed Aldag within the meaning of the ADA.

12. BNSF has more than 15 employees.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the ADA, 42 U.S.C. § 12101, et seq.

14. This Court also has jurisdiction under 42 U.S.C. § 12117, which incorporates the enforcement provisions of Title VII, including 42 U.S.C. § 2000e-5.

15. Venue is proper in this District under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because Aldag resides in this District, BNSF does business in this District, and relevant employment records are maintained and/or administered in this District.

16. Venue is further proper because Aldag would have continued working for BNSF in or from this District but for BNSF's unlawful employment practices.

17. Aldag filed a charge of discrimination with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission with 300 days of his termination.

2

18.    Aldag received a Notice of Right to Sue from the EEOC, and he filed this action within 90 days of then.

### FACTUAL ALLEGATIONS

19.    Aldag worked for BNSF.

20.    Aldag was subject to DOT/FRA drug-testing requirements.

21.    As part of those requirements, BNSF directed Aldag to report for a DOT/FRA follow-up urine drug test near Cheyenne, Wyoming on September 25, 2025.

22.    Aldag complied with BNSF's instruction and reported for the test.

23.    Aldag attempted to provide a urine specimen.

24.    Aldag was physically unable to produce the required 45 mL of urine on demand.

25.    Aldag's inability to produce the required specimen was caused by medical conditions affecting urination and kidney function.

26.    Those conditions included urinary hesitancy/BPH and reduced kidney function associated with treatment for gout.

27.    The collector initiated the DOT "shy bladder" procedure.

28.    Aldag remained at the collection site for the full three-hour period.

29.    Aldag was offered up to 40 ounces of water.

30.    Even after remaining at the collection site for the full three-hour period and drinking water, Aldag still could not produce a sufficient specimen.

31.    DOT drug-testing rules recognize that some employees cannot provide a sufficient urine specimen because of physiological conditions.

32.    Under those rules, an employee who cannot produce a sufficient urine specimen must be referred for a medical evaluation by a licensed physician.

3

33. If the physician determines that there is an ascertainable physiological condition that could have prevented the employee from providing a sufficient specimen, the test is cancelled.

34. If the test is cancelled for that reason, the employee's inability to provide a sufficient specimen is not treated as a refusal.

35. Only if there is no adequate medical explanation is the event treated as a refusal.

36. Aldag obtained medical documentation after the September 25, 2025 collection.

37. Aldag provided medical documentation to BNSF and/or those involved in the DOT shy-bladder process.

38. Two medical providers documented that Aldag suffered from urinary hesitancy, BPH, difficulty starting his stream, and reduced kidney function.

39. Those providers indicated that Aldag's medical conditions could have precluded him from providing the required amount of urine on demand.

40. Despite that documentation, BNSF concluded that there was no medical explanation for Aldag's inability to produce a sufficient urine specimen.

41. BNSF classified Aldag's shy-bladder event as a refusal.

42. BNSF removed Aldag from service.

43. BNSF then dismissed Aldag effective November 20, 2025.

44. BNSF stated that it dismissed Aldag for refusal to participate in required FRA follow up drug and alcohol testing.

45. BNSF also relied on its alcohol/drug policy and PEPA discipline policy.

46. BNSF's stated reason for dismissing Aldag was based on the MRO's determination that Aldag's shy-bladder event was a refusal.

47. Aldag did not refuse to participate in testing.

4

48. Aldag reported for testing as instructed.

49. Aldag attempted to provide a specimen.

50. Aldag remained at the collection site for the required shy-bladder period.

51. Aldag drank water as directed.

52. Aldag could not provide a sufficient urine specimen because of his medical conditions.

53. BNSF knew, or should have known, that Aldag's inability to provide a sufficient specimen was medically related.

54. BNSF knew, or should have known, that Aldag had urinary-voiding dysfunction.

55. BNSF knew, or should have known, that Aldag had reduced kidney function.

56. BNSF knew, or should have known, that those conditions could affect Aldag's ability to urinate on demand.

57. BNSF nevertheless treated Aldag's disability-related inability to urinate on demand as misconduct.

58. BNSF failed to recognize and apply the DOT-compliant medical-cancellation pathway.

59. BNSF failed to reasonably consider Aldag's medical documentation.

60. BNSF failed to reasonably consider whether Aldag's inability to provide a sufficient specimen was caused by an ascertainable physiological condition.

61. BNSF failed to reasonably accommodate Aldag's disability.

62. BNSF instead terminated Aldag because of conduct caused by his disability.

63. As a result, Aldag lost his job, wages, and benefits.

64. Aldag also suffered emotional distress.

5

65.     Aldag has been damaged by BNSF's unlawful conduct.

## CAUSE OF ACTION

66.     BNSF was Aldag's employer within the meaning of the ADA.

67.     At all relevant times, Aldag was disabled within the meaning of the ADA.

68.     Aldag had physical impairments that substantially limited one or more major life activities and/or major bodily functions, including urination, bladder function, kidney function, and genitourinary function.

69.     Aldag also had a record of such impairments.

70.     BNSF further regarded Aldag as having such impairments.

71.     Aldag was a qualified individual within the meaning of the ADA.

72.     Aldag could perform the essential functions of his job with or without reasonable accommodation.

73.     Section 12112(a) of the ADA prohibits employers from discriminating against qualified individuals on the basis of disability in regard to discharge, compensation, and other terms, conditions, and privileges of employment.

74.     The ADA defines discrimination to include terminating an employee because of disability.

75.     The ADA also defines discrimination to include failing to make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship.

76.     The ADA further prohibits using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out individuals with disabilities, unless the standard, test, or criterion is job-related and consistent with business necessity.

77.     BNSF discriminated against Aldag on the basis of disability when it treated his medically documented inability to urinate on demand as a refusal to test.

78.     BNSF discriminated against Aldag on the basis of disability when it removed him from service.

79.     BNSF discriminated against Aldag on the basis of disability when it dismissed him effective November 20, 2025.

80.     BNSF discriminated against Aldag on the basis of disability when it failed to accommodate his disability and failed to pursue DOT-compliant alternatives available under the shy-bladder process.

81.     BNSF discriminated against Aldag on the basis of disability when it applied its alcohol/drug and discipline policies in a manner that punished disability-related conduct.

82.     BNSF's stated reason for terminating Aldag was pretext for disability discrimination and/or was itself based on disability-related conduct.

83.     Because BNSF violated the ADA, Aldag has suffered and will continue to suffer lost income, lost benefits, emotional distress, and other damages.

84.     Aldag is entitled to attorney's fees, litigation expenses, expert fees, costs, and disbursements.

85.     BNSF committed the above-alleged acts with reckless or deliberate disregard for Aldag's federally protected rights.

86.     As a result, Aldag is entitled to punitive damages.

**REQUEST FOR RELIEF**

87.    Aldag requests that the Court find BNSF acted in violation of the ADA.

88.    Aldag further requests that the Court order BNSF to: (a) reinstate him; (b) pay him an award of damages arising from loss of past and future income and benefits in an amount to be determined by the trier of fact; (c) pay him an award for emotional distress in an amount to be determined by the trier of fact; (d) pay him prejudgment and post-judgment interest; (e) pay him costs, disbursements, litigation expenses, expert fees, and attorney's fees; (f) pay him punitive damages in the maximum amount allowed by law; and (g) provide all other relief available under the ADA.

89.    Aldag further requests that the Court order judgment against BNSF for all other relief the Court deems just and equitable.

July 6, 2026

PLAINTIFF'S COUNSEL

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (MN 389609)*
Casey Jones and Bolt Law Firm
2150 3rd Ave N, Suite 350
Anoka, MN 55303
Phone: (757) 477-0991
Email: nthompson@caseyjones.law


*Admitted to District of Nebraska

8